CLAPPER and wife *vs.* HOUSE.

Where a testator previous to the making of his will had made a written contract for the purchase of a lot of land and had paid part of the purchase money therefor, and afterwards devised such lot to his daughter in fee, but after the making of his will paid the residue of the purchase money and took a conveyance of the premises; *Held* that the conveyance of the legal estate to the testator subsequent to the making of the will, although it was a revocation at law was not so in equity; and that the devisee might file a bill in chancery to restrain the other heir at law from proceeding in an ejectment suit for the lot, and to compel him to release his legal title thereto which in equity he held as a mere trustee for her.

In the case of a mere equitable devise, where the legal estate descends to the heir as trustee for the equitable devisee, a feigned issue is not absolutely necessary to enable the court of chancery to make a decree to carry such devise into effect. In a case of that kind, if the heir at law wishes a feigned issue, for the purpose of contesting the validity of the will before a jury, he must ask for it at the hearing; as that is the proper time to ask for an issue if either party desires it.

Where a decree of the vice chancellor is appealed from after it has been enrolled and such decree is subsequently affirmed, if the decree of affirmance directs the proceedings to be remitted to the vice chancellor, such decree must be added to the original enrolment in the clerk's office and must be signed by the vice chancellor. But where the proceedings are not remitted to the vice chancellor, the original enrolment must be transmitted to the register or assistant register with whom the decree of affirmance is entered, and such decree must be added to the enrolment of the original decree, and must be signed by the chancellor.

THIS was an appeal from a decision of the vice chancellor of the seventh circuit. In June, 1827, Franchot and Van Rensselaer, being the owners of lot No. 77 in Lysander, entered into a written contract with R. House, the father of the defendant and of the complainant Maria Clapper, to sell the lot to him for $3200, about $700 of which was paid down, and the residue was payable in one and two years with annual interest. Shortly after the making of the first payment R. House entered into possession of the lot

and continued to occupy and improve it as his own until his death, in September, 1828. In September, 1827, R. House, the purchaser, executed his will in due form of law to pass real estate, and thereby devised lot No. 77 in Lysander, by name, together with all his other freehold estate, to his daughter Maria Clapper, in fee. And after giving a nominal legacy of $5, to the defendant, his son, he bequeathed the residue of his personal estate to his said daughter, and appointed her the executrix of his will. About two months after the making of this will, the testator paid the greater portion of the then unpaid purchase money, and paid the residue thereof in July 1828, when he received a conveyance of the premises pursuant to his contract of purchase. The devisee and her husband took possession of the premises in question after the death of her father, and continued in possession until February 1829, when the defendant commenced an ejectment suit against the husband, to recover the undivided half of the premises, claiming it as one of the heirs at law of the testator. The complainants thereupon filed their bill in this cause for an injunction to restrain the prosecution of the suit at law, and to establish their right to the premises under the will. The defendant by his answer admitted the making of the contract for the purchase of the lot in question, and the payment of the purchase money, and the subsequent execution of the conveyance to his father, as stated in the complainants' bill. He also admitted the making of the will, but insisted that the testator was incompetent to make a will, and that his signature to the will was improperly obtained. The defendant also insisted upon the invalidity of the devise, on the ground that the testator was not legally seized of the lot at the date of the will. The cause was heard upon pleadings and proofs. The vice chancellor decided in favor of the validity of the will, and that the devise of the lot in question to Mrs. Clapper was not revoked by the subsequent conveyance of the legal estate to the testator. The defendant was therefore perpetually enjoined from prosecuting any suit at law for the recovery of the lot or any part thereof as an heir at law of the testator ; and he was also decreed to pay the costs of

the ejectment suit, and the costs in this cause. From this decree and every part thereof, the defendant appealed.

*A. L. Jordan*, for the appellant. The testator acquired the title to the premises in question after the date of the will; the premises did not therefore pass to the complainants by the devise. The testator had no equitable title to the premises at the date of the will, not having then paid for the land. And he had at that time only a small equitable interest in the premises, having then paid on the contract of purchase only $707, leaving over $2500 due. This equitable interest was merged by the subsequent conveyance of the legal title to the testator and his heirs, which conveyance altered the testator's interest, and revoked the will. At all events, no greater or other interest could pass by the devise than the testator had in the premises at the date of the will. The legal title obtained by the testator after the date of his will cannot inure to the benefit of the devisee so as to enlarge, alter, or effect the devise. But if the legal title subsequently acquired did inure and pass the title, to the devisee, then it was a *legal title* and the complainants can have no relief; for their remedy was perfect at law, and no decree in this suit can alter or affect the devise or make it more perfect for the purposes of a defence to the ejectment suit. The testator disinherited his only son, which fact unexplained is unnatural, and not to be accounted for upon any ordinary principle upon which men usually act. The will was executed in consequence of an undue influence exercised by the complainants upon the mind of the testator. Testimony having been taken on both sides in reference to the fraud in procuring the will, the complainants erred in noticing it for hearing. They should have applied for an issue at law. *Bogart* v. *Perry*, 1 *John. Ch.* 52. *S. C.* 17 *Johns.* 354. *Sparrow* v. *Hardcastle*, 3 *Atk.* 803. *Lincoln's case*, 1 *Eq. Cas. Ab.* 411. *Abney* v. *Miller*, 2 *Atk.* 598. *Ward* v. *Moon*, 4 *Mad.* 368. *Bates* v. *Graves*, 2 *Ves. jr.* 289. 1 *Ves. sen.* 400. 2 *Brown Par. Rep.* 560. 2 *Ves. sen.* 567. 1. *P. Wms.* 121. 3 *P. Wms.* 130. 9 *Ves.* 1523. 1 *John. Ch.* 550. 2 *Brown Ch.*

1836.    400, 2 *Sch. & Lef.* 492.  9 *Ves.* 234.  12 *Ves.* 355.  7 *Par.*
Clapper  *Cas.* 70.  16 *Ves.* 91.  *Id.* 273.  3 *Wend.* 626.  *Clark* v. *Fish-*
v.       *er*, 1 *Paige*, 171.  *Jones* v. *Jones*, 3 *Meriv.* 161, *and note* 167.
House.   3 *Wend.* 503.  2 *Paige*, 396.  5 *John.* 118.  *Hopk.* 413.

*B. D. Noxon*, for the respondents.   A devise of land held
by the testator under a contract or articles of agreement for
the purchase thereof, is good in equity, though not at law.
When the testator after making the devise obtains the legal
title to the lands, in pursuance of the contract for the pur-
chase thereof, it is not such an alteration of the estate as to
work a revocation of the devise.  The will was duly proved ;
the competency of the testator fully established, and the
devise in all respects valid in equity to pass the estate to
Maria Clapper.   *Cruise's Dig. tit.* 38, *Devise*, ch. 3, § 32,
33, 36.  3 *John. Ch.* 398.  19 *Ves.* 198.  *Rider* v. *Wager*,
2 *P. Wms.* 332.  4 *Kent's Com.* 513.  *Cotter* v. *Layer*, 2 *P.*
*Wms.* 624.  *Williams* v. *Owens*, 2 *Ves. jr.* 601, 3.  7 *John.*
*Ch.* 272.  10 *Ves.* 613.  *Powell on Dev.* 599.  1 *Madd. Ch.*
286, 7, 8, 9.  *Newl. on Con.* 42, 3.  1 *Fonb. Eq.* 207, *note n.*
4 *Dane's Ab.* 573.  *Parsons* v. *Freeman*, 1 *Wilson*, 309.  3
*Atk.* 749, 798.  2 *Ves. & Beames*, 385.  6 *Ves.* 219.  *Doug-*
*lass*, 718, 19, 20, 21.  *Perry* v. *Phelps*, 1 *Ves. jr.* 251.  2
*Ves. jr.* 599.  4 *Mad.* 368.  8 *Ves.* 281.  7 *id.* 564.  *Bal-*
*lard* v. *Carter*, 5 *Pick.* 112.   The appellant not having ask-
ed for a feigned issue on the hearing before the vice chancel-
lor, the vice chancellor did not err in deciding the case with-
out awarding an issue.   3 *Young & Jarvis*, 278.  13 *Price*,
119.  *Id.* 425.  2 *Ball. & B.* 387.  5 *John. Ch.* 12, 148.
3 *Paige's Rep.* 457.  1 *John. Ch.* 436.  6 *id.* 255.  3 *Paige's*
*Rep.* 601.

THE CHANCELOR.   It is not material in this case to in-
quire whether the suspicion on which the testator acted in
disinheriting the defendant was well or ill founded.  The
fact that he separated from his wife soon after the birth of
the defendant shows that it was not a suspicion engendered
by interested persons when his mind had become enfeebled
by age and infirmity.   The testimony appears to leave no

room to doubt that the testator was of sound disposing mind and memory, and perfectly competent to devise his estate at the time this will was made. The testimony as to his subsequent weakness, both of mind and body, a few months previous to his death, is therefore immaterial; except that it might be relied upon by the respondents, for the purpose of showing that he was incompetent in July, 1828, to revoke the will, if the taking of a conveyance of the legal estate in pursuance of the previous agreement could have been construed into an implied revocation. There is no allegation in the defendant's answer that the testator, in 1828, was of sufficient capacity to revoke his will, and wished to do so, but that he was prevented from doing it by duress, fear or restraint. There being no such allegation in issue in the cause, the whole of the testimony on that subject was irrelevant and improper. And as it was objected to by the complainant's counsel at the time it was offered, it ought to have been expunged from the record, and probably would have been if an application to that effect had been made. If the defendant wished for a feigned issue, for the purpose of ascertaining whether the testator was competent to execute the will and executed the same freely and understandingly, he should have asked for the feigned issue at the hearing; as that is the proper time to ask for an issue if either party desires it. As the complainants came into this court for the purpose of enforcing an equitable devise, in opposition to the legal estate which had descended upon the heirs at law by virtue of the deed, this was a case of strict equitable cognizance, and a feigned issue was not absolutely necessary to enable the court to make a decree carrying into effect the equitable devise. The cause is therefore in a situation to be decided on its merits, free from any technical objections of mere form; and the rights of the parties depend upon the legal questions arising upon facts which, from the testimony in this case, are no longer in doubt.

The rights of the parties in this court must depend upon the application of the principles of equitable conversion to the case under consideration. Equitable conversion is a

constructive change in the nature of property, by which real estate is, in equity, considered as personal property, and personal property as real estate, for the purposes of devise or bequest, descent or distribution ; although such change had not in fact been effected at the time to which such equitable conversion refers itself. A court of equity, for certain purposes, looks upon that which is agreed to be done, or which a testator by his will has directed to be done, as actually done, according to the contract in the one case, or the direction of the testator in the other. Consequently when a testator has made a valid direction for the conversion of his personal estate into realty, for any purpose, or real estate into personalty, the person for whose benefit it is thus to be converted may devise or bequeath it as that species of estate into which it was directed to be converted. And if he dies intestate without having done some act amounting to a reconversion, the property will descend to his heirs at law or be distributable to his next of kin as if it were in fact that species of property into which it was directed to be converted. So where a valid contract is made for the sale of an estate, equity considering the vendee as the actual owner of the estate, and the vendor as the owner of the purchase money as a part of his personal property, although the time for the making of the conveyance or for the payment of the purchase money had not in fact arrived, at the time of the occurrence which renders the application of this principle of constructive conversion material to the rights of parties claiming an interest in the subject of such conversion. (*Sugd. Law of Vend.* 8 *Lond. ed.* 163.) The lot in question in the present case must therefore, upon this principle, be considered as a part of the real estate of the testator, at the time of making his will, in September, 1827, in the same manner as if the conveyance had actually been executed, and the purchase money paid, at the time when the contract of sale was entered into, two or three months previous to the date of the will. The payment of the purchase money by the testator, or so much thereof as remained unpaid, after the making of his will, could not have the effect to revoke the devise, any more than the payment of a mort-

1836.
Clapper
v.
House.

gage, subsequent to the execution of a will of real estate in which the testator had a legal title, could be considered as a revocation of the devise of the property upon which such mortgage was an incumbrance. In the devise or descent of equitable interests or estates in land, equity pursues the corresponding rules of law in relation to the devise or descent of similar interests in real estate where the legal estate is vested in the testator, or intestate, at the making of the will, or at his death, as the case may be. Where there is a valid contract to purchase lands, as the vendee is considered in equity as the real owner, and the unpaid purchase money as a mere incumbrance upon the land, the analogy is perfect between such an incumbrance upon an equitable right or title to the land itself, and a legal incumbrance upon the legal estate in real property devised. And as the payment of the mortgage by the testator in the last case, would not operate as a revocation of the devise at law, the payment of the purchase money in the first case will not operate as a revocation of the devise in equity. If therefore the testator had died after the payment of the whole purchase money and before the actual conveyance to him of the legal estate, the right to call upon the vendors for a specific performance of the contract would have vested in the complainants exclusively, by virtue of the devise ; and neither the heirs at law nor the personal representatives of the testator would have had any interest whatever in the land. But in consequence of the technical rule of law, which existed previous to the adoption of the revised statutes, that after acquired lands could not pass by any form of devise, whatever might have been the intention of the testator, the legal title, which was vested in him in this case after the making of the will, descended upon the heirs at law, as the mere trustees thereof, for the use of the devisee to whom it belonged in equity. The legal and equitable interests as to one undivided moiety of the lot thus uniting in Mrs. Clapper, her title thereto became perfect, at law as well as in equity, as to one half of the premises devised to her by her father ; and as to the other half she has a valid claim, in equity, to call upon the heir at law, upon whom the legal title

has descended, to release to her such legal title, so that her right to the whole lot, under the will of her father, may be made complete at law as well as in equity.

The cases which have been referred to on the argument, for the purpose of showing that a material change in the nature of the testator's legal or equitable interest in real estate after the date of his will is an implied revocation of a devise of such estate, are wholly inapplicable to the present case. They all proceed upon the principle that the testator has done some act which is inconsistent with his previous intention, as evidenced by the will, to give the particular property to the devisee. Upon the principle of equitable conversion, where a testator devises land which he has contracted to purchase, the presumption is that he intended that the devisee should take the entire beneficial interest therein discharged of the incumbrance of the unpaid purchase money, and with full power to claim a specific performance of the contract by a conveyance of the legal title from the vendor. Hence the devisee, previous to the revised statutes, might call upon the personal representative to pay off the purchase money which remained unpaid at the death of the testator, with the personal estate of the decedent. The payment of the purchase money and the taking of the conveyance of the legal estate by the testator in his life time, was therefore perfectly consistent with his original intent that his devisee should have the whole beneficial interest in the land, and was not, in equity, a revocation of the equitable devise. This court therefore compels the heir, upon whom the legal title has been cast by operation of law as the mere naked trustee of the devisee of the estate, to do what the vendor himself would have been bound to do if the legal estate had not passed from him before the death of the testator. The whole of this subject is so fully examined by the late Lord Chancellor of Ireland, Sir Edward Sugden, in his very valuable treatise upon the law of vendors and purchasers, that an attempt to go into an examination of the numerous cases cited or referred to by him would be a useless waste of time. In reference to the particular question now under consideration, he says, "Although the estate may, subsequently to the will, be con-

veyed or surrendered either to the purchaser or to a trustee for him, yet that will not operate as a revocation of the will. The legal estate will of course descend to the heir at law, and he will, in equity, be deemed a mere trustee for the devisee." (*Sugd. Law of Vend.* 167 *and note.*) In the present case, as the legal estate, which was conveyed to the testator after the making of the will, descended to the heir as trustee for the equitable devisee, the latter had no defence at law to the ejectment suit brought against her husband, who was seized of the equitable interest therein in her right. The complainants were therefore compelled to apply to this court for relief against this inequitable proceeding on the part of the defendant; and the vice chancellor has very properly decreed a perpetual injunction against the further prosecution of any suit at law to recover the possession of the premises, and charged the defendant with the costs to which the complainants had been subjected in defending their rights. And I think he should have gone still further and decreed a conveyance to Mrs. Clapper of the legal title to the moiety of the premises which had been cast upon the defendant as one of the heirs at law.

The decree appealed from must be affirmed with costs.

---

The original decree in this cause had been enrolled before the vice chancellor previous to the appeal; and a doubt having arisen as to the manner of enrolling the decree of affirmance in such a case, an application was made to the chancellor on the subject.

THE CHANCELLOR decided that in such cases, where the proceedings were directed to be remitted to the vice chancellor, the decree of affirmance must be added to the original enrolment in the clerk's office and must be signed by the vice chancellor. But where the decree of affirmance did not direct the proceedings to be remitted to the vice chancellor, as where the whole case was brought up by the appeal and remained before the chancellor, the original enrolment must be transmitted by the clerk to the

register or assistant register with whom the decree of affirm-ance was entered ; and the last mentioned decree must be added to such enrolment of the original decree, and must be signed by the chancellor.